JUNMEI WU, ESQ. (SBN 355385)
LAW OFFICES OF JUNMEI
251 SOUTH LAKE AVENUE, SUITE 800, ROOM 714
PASADENA
CA 91101

TELEPHONE: (737) 738-1440
EMAIL: JUNMEILAW@GMAIL.COM

ATTORNEY FOR PETITIONER HAOCHENG LI

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAOCHENG LI<br><br>*Petitioner*,<br><br>*v.*<br><br>WARDEN, DESERT VIEW FACILITY;<br><br>FIELD OFFICE DIRECTOR, ICE ERO LOS ANGELES;<br><br>*Respondents.* | No. _____<br><br>A# 249-386-763<br><br>**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br>**FIFTH AMENDMENT PROCEDURAL DUE PROCESS**<br>**EXPEDITED CONSIDERATION REQUESTED** |

## I. INTRODUCTION

1. Petitioner Haocheng Li challenges ICE's revocation of his prior release and his continuing physical detention without meaningful notice of the grounds for re-detention or an opportunity to answer them. ICE had previously released him into the community. He reports complying with every required ICE check-in and immigration court appearance. He seeks restoration of his liberty, not adjudication of his asylum application or dismissal of his pending state charge. Ex. A ¶¶ 1–3, 15.

2. The central issue is the opportunity ICE had to provide process before taking away that liberty. On October 22, 2026, three vehicles intercepted the car carrying Petitioner near his residence. Petitioner describes several ICE officers approaching. Those circumstances support an inference of a targeted, coordinated operation, not an assertion about how long ICE planned it. They warrant an explanation of why notice and an opportunity to respond could not precede revocation of release. Ex. A ¶¶ 9–11.

3. ICE also had an established reporting relationship with Petitioner. Its April 29, 2026 receipt scheduled his next report for October 26, 2026, four days after the re-arrest. Petitioner does not contend that ICE necessarily had to wait until that date. Rather, the scheduled appointment and his reporting history are concrete evidence that a notice-and-review alternative deserved consideration before an unannounced deprivation of liberty. Ex. E at 8; Ex. A ¶ 2.

4. The recent state arrest is a relevant intervening event, not a fact Petitioner conceals. He was arrested on October 21, released on bail early October 22, and re-arrested by ICE later that morning. He reports a pending domestic-battery charge. His roommate disputes the characterization of their relationship and denies that Petitioner assaulted him. The charge could justify investigation and reassessment; it did not eliminate the value of hearing readily available

contrary information. Petitioner does not ask this Court to decide his guilt or treat state bail as binding on ICE. Ex. A ¶¶ 7–9; Ex. C at 2–3.

5. Even if Respondents establish a particularized urgency making advance process impracticable, Petitioner's alternative claim remains: ICE held him at its Los Angeles office for approximately ten hours without a meaningful explanation or opportunity to respond. At 4:46 p.m., his attorney was available by telephone, yet an officer declined to speak with her. The operational concerns of a roadside arrest do not, without more, explain the failure to provide process during that later, controlled period of custody. Ex. A ¶¶ 12–13; Ex. B ¶¶ 2–4.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction because Petitioner is in federal custody and alleges that his custody violates the Constitution. 28 U.S.C. § 2241(c)(1), (3). He requests a writ restoring his liberty and an expedited return identifying the true cause of his detention. See 28 U.S.C. § 2243.

7. Petitioner is detained at Desert View Facility, 10250 Rancho Road, Adelanto, California, within this District and Division. The Warden is his immediate physical custodian. Venue and territorial habeas jurisdiction are proper here. Ex. A ¶ 1; Ex. D.

8. This petition challenges the constitutional adequacy of the procedures used to revoke release and maintain confinement. It does not seek review of an order of removal, interference with the adjudication of removability, or reconsideration of a discretionary bond weighing. Jennings distinguishes unreviewable discretionary custody judgments from challenges to the legal framework authorizing detention. Jennings v. Rodriguez, 138 S. Ct. 830 (2018)

9. The custody statute Respondents currently invoke has not been identified to Petitioner in a written statement of the reasons for re-detention. He does not predicate this constitutional petition on an unsupported assumption about that statute. He requests that Respondents identify

their claimed authority and produce the release, revocation, arrest, and custody records necessary for this Court to determine the lawfulness of his present confinement. Ex. A ¶ 13.

## III. PARTIES

10. Petitioner Haocheng Li, A 249-386-763, is the person detained and seeking relief. His declaration also uses the name order Li Haocheng. He remains detained at Desert View Facility. He has no current removal order; no immigration judge has granted him relief from removal; and the Government is not currently seeking his removal to a country other than China. His asylum case remains pending in immigration court. Ex. A ¶¶ 1–3; Ex. F.

11. Respondent Warden, Desert View Facility, has immediate physical custody of Petitioner and is sued in an official capacity. Respondent Field Office Director, ICE Enforcement and Removal Operations, Los Angeles, is sued in an official capacity for responsibility over the challenged ICE custody within the Los Angeles field office's operations. ICE's transfer notice identifies its Los Angeles office and Petitioner's detention at Desert View. Ex. D.

## IV. FACTUAL ALLEGATIONS

### A. PRIOR RELEASE AND ESTABLISHED COMPLIANCE

12. Petitioner entered the United States on August 15, 2024. After initially detaining him, ICE released him without requiring an immigration bond. He reports that he thereafter attended every required ICE check-in and every scheduled immigration hearing. Ex. A ¶ 2.

13. Petitioner filed an asylum application on November 15, 2024. He reports receiving employment authorization valid from May 14, 2025 through May 13, 2030 and beginning a small flea-market business in October 2025. He developed friendships and supported himself through that business. These facts describe his actual community life; neither an asylum filing nor employment authorization is alleged to confer immunity from detention. Ex. A ¶¶ 3–4.

14. ICE's reporting receipts document an ongoing supervision relationship, including a report on October 31, 2025 and a report on April 29, 2026. The latter scheduled October 26, 2026, between 1:00 and 2:00 p.m., as the next reporting date. Ex. E at 6, 8.

## B. THE STATE ARREST AND DISPUTED ALLEGATIONS

15. On October 21, 2026, Petitioner and his roommate Xiaodong Chao argued about a drinking-straw wrapper in Chao's car. Petitioner states that he accidentally spilled milk tea while gesturing and did not intend to injure Chao. Chao's account likewise denies an intentional throwing of the drink or a physical assault. Their factual accounts are evidence for evaluation, not a substitute for the state criminal process. Ex. A ¶ 7; Ex. C at 2–3.

16. Local police arrested Petitioner and held him overnight. Petitioner reports that bail was set at $20,000 and that he was released early October 22. He learned from Chao that the charge was domestic battery under California Penal Code section 243(e)(1). Both describe themselves as roommates, not romantic partners. Ex. A ¶ 8; Ex. C at 2–3.

17. On October 22, between approximately 9:00 and 10:00 a.m., Chao drove Petitioner toward the bail bond company so he could pay the remaining fee. Petitioner describes compliance with the state-release arrangements, not flight. Ex. A ¶ 9.

## C. ICE'S OPPORTUNITY TO PROVIDE ADVANCE NOTICE

18. Soon after leaving the residence, the car stopped at an intersection. Three vehicles surrounded it, one in front, one behind, and one beside it. ICE officers approached. Petitioner states that he could not understand what officers said, that they opened the door and removed him from the passenger seat without verifying his personal information, and that they handcuffed him. He received no written reasons and no opportunity to explain. Ex. A ¶¶ 10–11.

19. The coordinated positioning of multiple vehicles supports an inference that officers selected Petitioner for apprehension before approaching him. Petitioner cannot state when that decision was made, how long officers prepared, or when they learned of the state arrest. Those matters are within Respondents' records. The preparation, existing supervision relationship, and imminent check-in support examining whether meaningful prior notice was feasible; they do not alone prove time for a formal hearing.

20. Before this operation, Petitioner received no advance notice of a proposed revocation of release, no statement of the grounds he needed to answer, and no opportunity to present his reporting history or explain the state incident. His limited English compounded the difficulty when officers spoke to him at the scene. Ex. A ¶¶ 11, 15.

21. Petitioner did not see officers display a warrant. That observation does not prove that no administrative warrant existed. A warrant authorizing apprehension would not itself establish that Petitioner received meaningful notice or an opportunity to contest revocation of his prior release. Ex. A ¶ 11.

### D. A FURTHER OPPORTUNITY AFTER THE ROADSIDE APPREHENSION

22. ICE took Petitioner to 300 North Los Angeles Street, Los Angeles, and held him there for approximately ten hours. He reports receiving neither written reasons nor an explanation and no opportunity to respond to the basis for re-detention. Ex. A ¶ 12.

23. At 4:46 p.m. on October 22, counsel Junmei Wu received his call. Counsel personally heard him identify her as his attorney and ask the officer to speak with her so she could ascertain the reasons and help him respond. Counsel heard the officer say, in substance, that he was not allowed to speak with her. The officer provided counsel no reason for the detention. Ex. B ¶¶ 2–4.

24. That call presented a specific, contemporaneous opportunity for an explanation and response through existing counsel. Even if officers reasonably needed immediate control of the vehicle and its occupants, that does not resolve whether later continued custody without explanation or response was justified. Petitioner challenges the lost opportunity for meaningful custody review, not merely the officer's refusal to have a conversation.

25. ICE transferred Petitioner to Desert View Facility on October 22. Its October 27 transfer notice records that date and location. Petitioner's declaration states that he remained detained and had not received written reasons for re-detention as of its November 15 date. Ex. A ¶ 13; Ex. D.

26. A November 4 immigration notice schedules a master hearing for December 7, 2026. That notice is a master-calendar notice, not evidence of a custody hearing addressing the challenged re-detention. Petitioner's confinement has prevented his business activities and, according to his declaration, prevented his attendance at the November 2 state appearance. His account of what occurred in state court is based in part on information from Chao. Ex. A ¶¶ 14–15; Ex. F.

## V. EXHAUSTION AND NEED FOR PROMPT REVIEW

27. No bond or custody review has been requested, held, or decided since the October 22 re-arrest. No prior federal habeas petition has challenged this detention. Petitioner requests that prudential exhaustion be excused because he challenges the absence of process before revocation of existing liberty and seeks restoration of the pre-deprivation status quo. The continuing deprivation warrants prompt constitutional review rather than requiring a new administrative proceeding as a prerequisite.

28. Petitioner sought an explanation through counsel during the initial office detention and was unable to obtain it. A hypothetical later custody proceeding does not establish that the process

already afforded was timely or adequate. If Respondents contend that later proceedings have cured the continuing deprivation, they should identify those proceedings and produce the pertinent notice, record, and decision. Ex. A ¶ 13; Ex. B ¶¶ 2–4.

## VI. CLAIM FOR RELIEF: FIFTH AMENDMENT PROCEDURAL DUE PROCESS REVOCATION OF PRIOR RELEASE WITHOUT TIMELY NOTICE AND A MEANINGFUL OPPORTUNITY TO RESPOND

29. Petitioner incorporates paragraphs 1–28. His claim concerns both the failure to provide feasible pre-deprivation safeguards and, alternatively, the failure to provide prompt meaningful process after any justified emergency apprehension. These are alternative applications of one procedural due process claim, not duplicative causes of action.

30. Mathews requires consideration of the private interest, the risk of error and likely value of safeguards, and the Government's interests and burdens. Its requirement of a meaningful opportunity to be heard is sensitive to the circumstances; it does not impose an identical hearing on every governmental action. Mathews v. Eldridge, 424 U.S. 319, 333–35 (1976)

### A. THE PRIOR RELEASE CREATED A SUBSTANTIAL INTEREST IN REMAINING AT LIBERTY

31. Petitioner's interest is not simply a request for release by someone who has never lived outside immigration custody. ICE affirmatively released him and maintained a reporting relationship while he built a home and livelihood. Re-incarceration disrupted that existing liberty and his ability to work and defend the state case. Ex. A ¶¶ 2–4, 14–15.

32. In Pinchi, a district court applying Mathews recognized a protected interest after ICE release and required a pre-detention hearing. That decision is persuasive rather than binding. It involved a person without an intervening criminal arrest; Li's state arrest therefore materially

distinguishes the governmental-interest analysis here. The distinction calls for examination of the actual grounds and urgency, not omission of the arrest from the analysis. Pinchi v. Noem, 792 F. Supp. 3d 1025 (N.D. Cal. 2025)

## B. PRIOR NOTICE HAD CONCRETE VALUE AND WAS NOT SHOWN TO BE IMPRACTICABLE

33. Notice could have identified whether ICE's concern was the state allegation, a reporting violation, or some other ground. Without that information, Petitioner could not direct a response to the actual custody issue. With a meaningful opportunity, he could have presented his reporting receipts, explained the recent bail release and destination, and offered Chao's firsthand account. Ex. A ¶ 15.

34. ICE's established reporting arrangements and the October 26 appointment provided an identifiable administrative route for notice and review. The Government could have considered communicating proposed custody grounds, arranging an earlier supervised appearance, or using the scheduled check-in for review before revoking release. These are proposed safeguards, not allegations that any particular procedure was offered or that waiting four days was necessarily safe.

35. The operation provides a further reason to examine feasibility: officers coordinated an interception using three vehicles near Petitioner's residence. Respondents should explain when the custody decision was reached and what individualized circumstances made notice impracticable. Petitioner does not claim knowledge of undisclosed planning or assert that every planned arrest permits advance warning.

36. The proposed safeguards were valuable precisely because the state allegation was disputed and language barriers affected the underlying encounter. A decisionmaker could consider the

police information, the pending charge, the bail release, Chao's competing account, compliance history, and appropriate conditions together. Petitioner does not claim an arrest allegation may never support detention or that the federal decisionmaker must accept his account.

## C. THE GOVERNMENT MUST JUSTIFY DISPENSING WITH NOTICE IN THIS CASE

37. Petitioner recognizes the Government's substantial interests in public safety, preventing flight, and enforcing immigration law. An intervening arrest may alter a prior risk assessment. But changed information and urgency are different questions: a basis to reconsider release does not automatically establish a need to dispense with all notice and response before doing so.

38. The record available to Petitioner identifies no explanation of an imminent threat, attempted evasion, or other particularized reason why limited notice and review could not precede revocation. Petitioner does not assert that no such information exists. Respondents should produce the contemporaneous reasons and records rather than have urgency inferred solely from the fact that an arrest occurred.

39. His prior compliance, continuing residence, return from state custody on bail, and impending check-in support the argument that there was a practical opportunity for prior process. Those considerations do not bind ICE to the state court's bail result; they bear on the separate need for an unannounced revocation of existing release.

## D. ALTERNATIVELY, IMMEDIATE APPREHENSION DID NOT JUSTIFY THE ENSUING ABSENCE OF PROCESS

40. Even if the Court finds advance notice impracticable, that finding would not dispose of the challenge to continued detention. At the ICE office, Petitioner was under physical control, and counsel was actually available. An explanation in a language he understood and a meaningful

opportunity to answer were feasible safeguards whose omission requires an independent justification. Ex. A ¶¶ 12–13; Ex. B ¶¶ 2–4.

41. Saravia affirmed prompt neutral review for previously released unaccompanied minors who were re-arrested on disputed allegations. It supports, by analogy, the importance of notice and timely response when previously granted liberty is withdrawn. It involved a distinct statutory framework and does not establish a universal adult right to a pre-arrest hearing or an automatic seven-day rule for this case. Saravia ex rel. A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018)

42. Petitioner does not contend that a ten-hour hold alone violates a fixed processing deadline. He alleges that the unannounced revocation, absence of intelligible grounds, lost opportunity to respond through available counsel, and continuing custody together denied process at a meaningful time. The Court should examine the actual safeguards provided and the reasons for withholding earlier safeguards.

## VII. PRAYER FOR RELIEF

43. Petitioner seeks release restoring the conditions that existed before the unconstitutional revocation of his liberty. In Guerrero v. Warden of Adelanto ICE Processing Ctr., No. 5:26-cv-05452-KES (C.D. Cal. Nov. 3, 2026), the court ordered release after re-detention following a domestic-violence arrest, based on the combined absence of pre-deprivation process, adequate notice of detention authority, and a meaningful post-detention remedy. That persuasive decision supports restoration of liberty rather than treating the prospect of a later hearing as an automatic cure. Its facts differ, including the offense alleged and the interval before ICE detention. Here, Petitioner relies on his own circumstances and the concrete opportunities for notice identified above.

44. The habeas statute directs an expedited return certifying the true cause of detention and authorizes disposition as law and justice require. Petitioner requests prompt adjudication under 28 U.S.C. § 2243

WHEREFORE, Petitioner respectfully requests that the Court:

A. Order Respondents promptly to show cause and identify the precise statutory and factual authority for his present custody;

B. Require production of the prior release records, any arrest warrant, arrest narrative, release-revocation decision, and custody determination, including the contemporaneous reasons for proceeding without advance notice;

C. Grant the writ and order Petitioner's release, subject to lawful reporting and supervision conditions, to remedy the unconstitutional revocation of his prior release;

D. If release is granted, require constitutionally adequate notice and review before any renewed detention on the same grounds, subject to genuinely exigent circumstances and prompt subsequent review; and

E. Grant such other relief as law and justice require.

Dated: November 16, 2026

Respectfully submitted,

s/ Junmei Wu

Junmei Wu, Esq.

Attorney for Petitioner Haocheng Li

**VERIFICATION**

I am the attorney for Petitioner Haocheng Li and submit this verification on his behalf pursuant to 28 U.S.C. § 2242 because he is detained at the Desert View Facility and cannot readily sign

this petition. I have discussed the facts stated in this Petition with Petitioner, and have reviewed the documents attached as exhibits. I verify under penalty of perjury under the laws of the United States that the factual statements in this Petition are true and correct to the best of my knowledge, information, and belief.

Executed on November 16, 2026, in Pasadena, California.

s/ Junmei Wu

Junmei Wu, Esq.

Attorney for Petitioner Haocheng Li

**EXHIBIT LIST**

**Exhibit A** — Declaration of Petitioner, with translation and counsel's declaration regarding review, confirmation, and authorization.

**Exhibit B** — Declaration of Junmei Wu concerning the October 22, 2026, telephone call.

**Exhibit C** — Xiaodong Chao's signed November 2, 2026, clarification statement, source pages 2–3 only. The unsigned first-page declaration is excluded.

**Exhibit D** — ICE Form I-830 recording the October 22, 2026, transfer to Desert View Facility.

**Exhibit E** — Entry and ICE check-in records; references use the source PDF page numbers.

**Exhibit F** — Asylum-related filing and November 4, 2026, notice scheduling the December 7 master hearing.

**PROOF OF SERVICE**

I am over the age of eighteen and not a party to this action. On November 16, 2026, I caused the foregoing Petition for Writ of Habeas Corpus to be served on Respondents through the Court's electronic filing system.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on: November 16, 2026, in Pasadena, CA.

s/ Junmei Wu

Junmei Wu, Esq.

Attorney for Petitioner Haocheng Li